In our second case, we have Manis v. Department of Agriculture. Mr. Robbins, good to have you with us, Mr. Robbins. Thank you, Your Honor. May it please the Court, it's Josh Robbins for plaintiff appellant Joe Manis. The U.S. Department of Agriculture's administrative adjudication process for Horse Protection Act claims is unconstitutionally structured in multiple ways. Its final decision maker issues unreviewable decisions but is not appointed by a principal officer, its administrative law judges are unconstitutionally tenure protected, and it resolves common law claims without a jury outside of an Article III court. These constitutional violations are causing Mr. Manis an ongoing irreparable harm in his Horse Protection Act adjudication that is still underway. This adjudication must be enjoined to avoid further irreparable injury to Mr. Manis while his constitutional claims are heard in federal court. I'd like to focus on two- When you presented these constitutional claims to Judge Osteen- That's correct, Your Honor. to the district court. That's correct. We filed a lawsuit under Axon in district court, raised all of these claims and moved for a preliminary injunction. So we heard before this court- Is there anything in here that's not a constitutional claim? You got any statutory claims or anything besides constitutional claim? Just constitutional claims, Your Honor. We have the Appointments Clause claim, a removal claim, a Seventh Amendment claim, and an Article III claim. And you said the proceedings before the USDA are still ongoing. You haven't gotten a decision yet? That's correct, Your Honor. So the hearing occurred before the Administrative Law Judge already. Post-hearing briefing has concluded. Mr. Manis is still awaiting- Post-hearing briefing has concluded? That's correct, Your Honor. So you want us to enjoin the district court from ruling? We would like- We're seeking a preliminary injunction of the USDA proceeding. And the posture of that proceeding is that it's been fully heard and briefed and now you're waiting on the district court ruling? No, Your Honor. So we filed a collateral challenge to the ongoing proceeding. So the USDA proceeding has been briefed and you're waiting on a decision? We're waiting on a decision from the ALJ. But of course, there could still be an appeal to the judicial officer. So you want us to enjoin the ALJ from deciding?  And that's what you presented to Judge Osteen in the district court? Yeah, we asked for a preliminary- The same thing. Correct. Well, we asked for a preliminary- You're saying Judge Osteen erred, but I thought you were just trying to enjoin the hearing. Get Judge Osteen to stop the hearing before the ALJ. Well, in our complaint, we sought for an injunction of Mr. Maness's USDA adjudication as a whole. At the time of the PI hearing before Judge Osteen, what was immediately before Mr. Maness was the hearing before the ALJ. That created particular- So Judge Osteen, did he deny the injunction? Correct. Was he denying your request for relief against the hearing? Or was he denying everything that was going to go on before the Department of Agriculture? I understood Judge Osteen, and I'm happy to check the order. Well, I understood. You're a lawyer. We weren't there. I mean, we got his opinion. Yes, Your Honor. It reads like it's considering the injunction request against the hearing. Yes, Your Honor. Yes, Your Honor. So at the time, the focus of the discussion was on the hearing, but our request was for a preliminary injunction of the entire USDA adjudication process against Mr. Maness. So that's what you released, and for sure that's what you want us to do. Yes, Your Honor. So isn't it fair to say you're trying to get us to do something that you didn't request to Judge Osteen? No, Your Honor. I believe we asked in our complaint and in the PI- Right. But you say that what was before him was a motion for injunctive relief. Yes, sir. Your Honor, we requested- A preliminary injunction. That's correct, Your Honor, of the entire- And he wrote an opinion about these legal issues and denied them all. That's correct, Your Honor. But, and so they had to hear that what he didn't enjoin, but they have other- that they haven't made a decision yet. That's correct. So you want us to enjoin the decision. We're- the request for an injunction- You can't enjoin the hearing. It's already been held. That's correct, Your Honor, but our request for an injunction was ultimately for- was for an injunction of the entire USDA proceeding, which continues- Well, yeah, you do say at JA32 on page two of your motion that what you're asking for is an immediate stay of the USDA adjudication until this case is resolved. So that goes to your point about the full thing, meaning until it's resolved, until there's a decision. Yes, Your Honor. And does Judge Osteen's opinion reflect that that's the way he understood it? Your Honor, I would have to look to make sure that the wording is correct. But the- I believe that Judge Osteen's- and I will confirm before I come back up for a reply, but our request for relief was for an injunction of the entire USDA adjudication process, and that's what Judge Osteen was ruling on. Thank you. The first constitutional issue that I would like to address is the- our Seventh Amendment and Article III claims. The Supreme Court's decision this past June in SEC v. Jarkissi that common law securities fraud claims must be tried to a jury in an Article III court effectively decides that Mr. Maness is also entitled to a jury in an Article III court. Jarkissi applied a two-part test for the Seventh Amendment that has been longstanding. First, that the claim is common law in nature. That's a legal claim as opposed to one in equity or in admiralty. And second, whether or not that claim falls within the public rights- Did you say this was a common law claim? That's correct, Your Honor. The HPA claim is a common law claim. What kind of claim? Under Tull v. the United States, it's an action in debt. So in Tull, the Supreme Court recognized- Action in debt? That's correct, Your Honor. Debt's historically one of those common law claims. They teach you common law pleading in your law school? Did you have common law pleading? Do you have a course in common law pleading? No, Your Honor. I had one. When I went, we had one. Yeah, I remember debt. Yeah. Assumption. Trespass on the case. Things like that. Yeah. We didn't even know common law pleading. It helps when you get into these constitutional questions where they resurrect these things. Yes, Your Honor. And in Tull- But it also says $20 in that Seventh Amendment. Yep. It has to be a $20 claim. At least $20. Yes, Your Honor. And we believe that- But I've read here that they've- One of the 20 A.J. letters says they've changed the claim to $10. Well, the APHIS has requested- But they changed it to $10 on you. They changed their request to- APHIS changed their request for only a $10 penalty. But under the statutory scheme, it's the ALJ and the judicial officer that has the ability to impose penalties. In this case, up to nearly $7,000. And in any event, under the voluntary cessation exception to the mootness doctrine, in its motion, the USDA maintains the ability to continue to impose penalties higher than $20. So, Mr. Maness' Seventh Amendment- And you want us to decide all four? Because you've got four constitutional claims? Yes, Your Honor. You want us to decide all four of them? Well, you only need to decide one to enjoin the- So, that's what I mean. You think you only need to decide one of them? That's correct, Your Honor. Which one do you want us to decide? Well, Your Honor, the- We think we're correct on all four, but our preference would be- You ever heard of Ashwander? No, Your Honor. That's disappointing. That's a Supreme Court case that says there's a thing called the constitutional avoidance doctrine. And courts aren't supposed to rule on constitutional issues if they can possibly rule on non-constitutional issues, which would apply, certainly, to not deciding four constitutional issues if you can get away with only deciding one. Well, Your Honor, this court- Ashwander. Well, Your Honor, this court could certainly decide the Seventh Amendment and or Article III claims, and that would resolve the case and end the adjudication because then- The Tenth Amendment? Seventh Amendment. The Seventh Amendment. So, you want to stick with the Seventh Amendment? I think the Seventh Amendment and Article III claims rise and fall together because of the structure of the analysis. You're down to two. Two constitutional issues. If you decide the Seventh Amendment, nested within it is the application of the public rights exception. So, which of the two are you giving up? I don't believe we can give up either of the claims in this case. I apologize, Your Honor, may I finish? You don't want to give up any of the four. So, you still maintain four claims? That's correct, Your Honor. If it violates the Constitution, I judge Osteen's opinion. We maintain all four claims, but, of course, the court could grant a preliminary injunction based on any of the one. And my only explanation is- You want us to grant a permanent injunction? Just a preliminary injunction, Your Honor. Just a preliminary injunction. That's correct, Your Honor. This is up on a preliminary injunction. And any preliminary injunction would be short-lived in this case because summary judgment- Now, the part about the Supreme Court case, the $20 thing, had that been decided when Judge Osteen ruled? No, Your Honor. So, there's a new case by the Supreme Court that you're arguing about that wasn't presented to the district court judge? That's correct. Well, that wouldn't be very fair to him for us to reverse you on that, would it? Well, Your Honor, the case didn't come down until the day after a briefing was complete. In this case, we filed a 28-J letter of supplemental authority. I'm not complaining about that. Judge Osteen didn't have that before him. The $20 claim on debt for the $10 amendment. Well, Your Honor, I believe this court nevertheless can decide the issue. Particularly, it's necessary in this preliminary injunction posture because our client, Mr. Maness, is being injured every day. He continues to be subject to the unconstitutionally structured adjudication. Is Atlas Roofing still good law in light of the risk? In light of jarczy? Yes. I believe it's been extremely narrowed. So, the court in that case, in its public rights analysis, said that the public rights exception had to be historically based. That there was a presumption that common law claims... And you maintain that right here is one that's not a public right? That's correct, Your Honor. Because it's... We're talking about the soreness of animals. In this instance, hobbling horses is probably the way I put it. We call it soreness. Hobbling an animal so that it would have a gait like a Tennessee walking horse that you could do naturally through other ways. And this act is here. Isn't that animal welfare? Can you even conceive of common law having a concern about animal welfare? I don't seem to... It doesn't seem to fit. That's more of a public right. Two responses to that, Your Honor. First, I think it's important how Congress structured the claim and the prohibition. So, the statutory prohibition is not on soaring a horse. The statutory prohibition that Mr. Maness has been accused of here is allowing a horse that he owns to be entered into a competition while soar. And under 15 U.S.C. 1822, Congress said that it was enacting this statute to prevent unfairness in competition. And Congress also provided for punitive civil money penalties. So, that sets up this case as a common law action. The point being, the competition brings the individuals, but they also said it was animal welfare. Doesn't that make it a public concern there? I don't think the fact that Congress also found an animal welfare concern changes the structure of the... It made it strict liability. That's correct, Your Honor. But under Tull, both the cause of action and the claim, the punitive civil monetary penalties satisfies the common law nature of the claim as an action in debt. I think this is very different than the Osh Act claims that were at issue in Atlas Roofing. Under the Occupational Safety and Health Act, Congress directed OSHA to come up with innovative ways to prevent workplace safety. Darkasy described it as a building code, the regulations that OSHA came up with. And even the enforcement scheme itself is different. So, you actually have inspectors going out to sites that issue citations that then people who receive the citations can challenge later. Here in this structure, you have a statutory prohibition on conduct with punitive civil monetary penalties. The horse is disqualified at the time, but the complaint isn't filed until later. So, it looks very much like a court proceeding and easily falls within Darkasy. I see my time has expired. Thank you very much. Can you save some time? Thank you. Mr. White. Do you represent the Department of Agriculture? I do. Good to have you with us. Thank you, Your Honor. It may please the Court, Graham White for the Department of Agriculture. The District Court committed no abuse of discretion here when it denied a preliminary injunction and instead allowed this case to proceed in the normal course. The District Court correctly found that plaintiff is unlikely to succeed on the merits. But even apart from that, the plaintiff cannot show that he suffered an irreparable harm here or that the equities tip in his favor. And plaintiff's failure to establish any one of these factors is enough to affirm the denial of a preliminary injunction here. On the merits, I'll just start briefly with the Seventh Amendment issue since there was a little bit of back and forth there. There's no need for this Court to reach the Seventh Amendment issue because, as we explained in our 28-J letter, the agency has moved to amend its complaint and is no longer seeking a civil penalty in excess of $20. The Seventh Amendment, on its plain face, only applies to civil penalties in excess of $20. Does it matter that ultimately there could be an award in excess of $20,000? I guess up to $6,000. Does that matter? No, I don't think so for a couple of reasons. Answer the first question then. Could there be an award in excess of $20,000 notwithstanding the SEC's demand or whatever for $20? The ALJ has the discretion to issue an award within those combines of the statute. So he could give more than $20,000. But it's exceedingly, exceedingly unlikely for that to happen because the agency— The question is, does it exceed $20 for the Constitution? The Constitution is pretty strict, it turns out. You look at it, there's $20 in there. $20 back then probably was a lot of money. There's no money now, but nonetheless, it's there. At least from the other perspective, they argue that because he could get up to $6,000, the SEC's demand for $20 really might be, I guess, not feckless but not effective. Right. So a couple of responses, Judge Wynn. First, again, the agency has already said with respect to the proceeding before the ALJ, it is no longer seeking $20. And I can represent to the court that the agency will not seek more than $20 throughout the administrative proceedings below. Where does the ALJ derive authority from? From the statute. The statute gives the ALJ the authority to implement a civil penalty. But the amount of controversy under the— I mean the ultimate creation, the ALJs, the existence. Does it come from the SEC as a delegation of authority, or how is that? So the ALJs are created by statute and their authorities are required to follow the procedures that the Secretary delegates here. But I think that's sort of beside the point from the Seventh Amendment inquiry. Again, as Judge King pointed out, there's no need for this court to reach the weighty constitutional issues on the Seventh Amendment problem. And let me just make one quick additional point. My friend on the other side mentioned the voluntary cessation exception to mootness. To the extent that he is suggesting that USDA could seek more than $20 in other cases going forward, plaintiff does not have standing to challenge USDA's levying of civil penalties in other cases. The voluntary cessation exception to mootness requires the plaintiff to show that he will, again, be subjected to the alleged illegality. And as I said a moment ago, the USDA has not only disclaimed any civil penalties in this case in excess of $20, it will not seek those penalties going forward in this proceeding. Now, as for the plaintiff's remaining merits arguments, plaintiff makes the argument that the judicial officer is a principal officer. The test for distinguishing principal officers from inferior officers under the Constitution is the three-factor test. That's kind of a misnomer, though, isn't it? I'm sorry? That's a misnomer. They call the judicial officer's a title. It's a title. But he's really an agency employee. That's correct. He's not a judicial officer. Well, the judicial officer— It's a misnomer. I'm trying to help you. Well, I think— It's a misnomer. Why do they call him a judicial officer when he's not an Article III? He's an employee of the Department of Agriculture. That's exactly right. The judicial officer's authority, he exercises only— He's not a judicial officer. I'm sorry. I just— So it's a misnomer. For lack of a better term, Judge King, I'll just refer to him because that's the title that the Secretary delegated to him. But to your point, the judicial officer exercises only the authority delegated to him by the Secretary. Okay? And under the three-factor test in Edmund, none of the factors are dispositive, and courts are required to consider the degree of administrative oversight by the Secretary, removal authority, and final decision-making authority. And those three factors point decisively in favor of inferior officer status for this particular employee. Because as we explained in our brief, the judicial officer is solely a creature of regulation. He only exercises the authority that the Secretary delegates to him. The Secretary can rescind that delegation of authority at any time, and the USDA's regulations expressly state that nothing— If a judicial officer makes a determination, can the Secretary review it? No, but that factor is not dispositive under the Supreme Court's decision in Arthrex. It's a three-factor test, and we know it's not dispositive because the Supreme Court in Arthrex cited with approval other examples of inferior officers throughout the government who exercise final decision-making authority, but are still accountable to a principal officer in other ways. The Benefits Review Board of the Department of Labor is one example that we cite in our brief, and the Supreme Court discusses in Arthrex. There are other examples here. But one other critical point, Judge Wynn, there is that even if the judicial officer— or excuse me, even if the Secretary of Agriculture can't review a decision retroactively from the judicial officer, the Secretary is still accountable for that decision. And that's a critical point, because the Supreme Court in Arthrex made clear that the fundamental concern under the Appointments Clause is about accountability. Is there a chain of accountability running from the inferior officer all the way up through the department head and other principal officers within the department? So in Arthrex, that was not satisfied because Congress essentially forced a particular system of administrative adjudication on the agency. The PTO director had no authority, had very limited authority by statute to issue procedures governing the patent proceedings. He couldn't remove the officer and couldn't review the final decisions. That's not what we have here, because the Secretary of Agriculture could modify any of the judicial officer's powers, including final decision-making authority, at any time. In reviewing this, I couldn't help but think about my military days as a military judge and how the military courts work, and there's such a thing called a convening authority. You go through the whole process, and they can undo it all. You don't quite have that here because, as you say, it's not reviewable, but nonetheless, that judicial officer is accountable. I'm really having a hard time figuring out how is he accountable? I mean, in what way? Because the buck ultimately stops with the secretary. If the judicial officer makes a decision that is unpopular or sparks any kind of political backlash, the blame still lies with the secretary because he is the one who created the judicial officer and delegated him powers. That is not what was true in Arthrex because Congress essentially insulated the patent trial and appeal board completely from supervision. But that's kind of my point. He's the one that has all the authority to give it to him, but once he makes that decision that's not retroactive, he can't review it. And it seems like that sounds like he's a principled officer to me. No, but again, Judge Wynn, under Edmund, that is only one factor, and it's not dispositive. We know, again, that that is not a dispositive factor because the Supreme Court, as I mentioned a moment ago, in Arthrex cited other examples where inferior officers exercised permissibly, exercised final decision-making authority. But even if Your Honor were to disagree with that, I just want to talk about the remedy for a second. Plaintiff is seeking to enjoin the entire administrative proceeding here. That is not what the Supreme Court held. Let me ask you about that. Opposing counsel says that the USDA proceeding has been completed and fully briefed and only now waiting on the ALJ decision. Is that correct? That is correct, Your Honor. If the ALJ decides this afternoon, is this appeal moot? Well, I mean, I think it's already, it probably depends on the claim because, I mean, the Seventh Amendment claim is moot because the USDA isn't seeking penalties. I mean, I think, as my friend on the other side said a moment ago, they're challenging the entire adjudicative process going up. I mean, I guess it would... But the appeal is only for, what else, after the ALJ, what other adjudicative process is there? Sorry, so there could be an appeal of the decision to the judicial officer, and I think sort of the hypothetical nature of your question sort of underscores why relief is inappropriate at this stage because, look, we don't even have a decision from the ALJ. That might be helpful in resolving some of the plaintiff's claims here, including the Seventh Amendment claim where he asserts that he's going to be on the hook for $20, excuse me, for civil penalties in excess of $20. I think that's very unlikely to be the case. We'll find out when the ALJ issues its decision. Now... Would you be okay with following Judge Packard's position for this to be moved? Of course. Look, I mean, I think there's no... Ultimately, we're in the posture of a preliminary injunction. Were you involved in the proceedings in the district court? No, I was not. Who represented the Agriculture Department there? The United States Attorney? Yes. And you all didn't work with either the Civil Division or the Department of Justice? On the appellate staff. Pardon? On the appellate staff. So we were brought in to handle this case on appeal in this court. Okay. So you weren't in the lower court. Do you know, was this case argued before Judge Osteen? There was a hearing, yes. Pardon? Yes, there was a hearing. There was a hearing before Judge Osteen. Yeah. And he wrote an opinion. That's correct. And he denied a temporary restraining order and a preliminary injunction. That's correct. In two separate opinions. And he only ruled on one element of the preliminary injunction test. That's correct. That was a likelihood of success on the merits. There are four. So what possible did they appeal? So what, and all they were asking for, they told him, I think, was to stop the hearing. He claims that that's motion or the complaint said something broader than that. What's really on appeal here from Judge Osteen? So, I mean. They say there are four constitutional questions. Right. So I understand. And they wanted to decide them all. And the only question was, before Judge Osteen ruled on them, was the likelihood of success. Likelihood. Not the fact that they were going to succeed, but the likelihood of success. Because it was on a preliminary injunction. That's right. He denied it. He denied it. The fundamental question here is whether that denial was an abuse of discretion. But what did you appeal after somebody denies a preliminary injunction? Why? You appeal everything? The possible, you appeal four constitutional issues that were never ruled on? Well, plaintiff is arguing that the district court abused its discretion. We obviously disagree with that. But to Your Honor's point, the likelihood of success on the merits is only one factor here. And this court can affirm the denial of a preliminary injunction for the failure to show any of the other factors, including irreparable harm here. Because, again, the plaintiff has not put forward any evidence or any argument that he has suffered an irreparable injury, other than having to participate in this agency proceeding. And he asserts that's enough under Axon. But that is not what Axon said. Well, what do you want us to do here? What would you have us do? Affirm Judge Osteen? Yes, this court should affirm the denial. Or dismiss the case? This court should affirm the denial of the preliminary injunction. Affirm. You want it affirmed. That's correct. And so, again, it So you don't take the position that any of it's moot? Well, the Seventh Amendment claim is moot, because we're not wrong. I'm asking you what you want us to do. Yes, this court can affirm the denial of a preliminary injunction. We can. We can. But what do you want us to do? There are a number of avenues here. You could either say that there's no irreparable harm. That's probably the most straightforward way. Because under Axon, Axon had nothing to do with the standard for a preliminary injunction. This court's sister circuits have already held that. The D.C. Circuit in Albion Securities, the Tenth Circuit in Leach Co. So just on irreparable harm, that's probably the most straightforward way for this court to affirm the denial of a preliminary injunction. There is no need to necessarily address any of the merits issues here. And, again, on the irreparable harm issue, plaintiff would have to satisfy it. And he's asking this court to come into conflict with the D.C. Circuit and the Tenth Circuit. And I believe the Sixth Circuit, albeit in an unpublished opinion, also rejected the plaintiff's interpretation of Axon as speaking to the irreparable harm factor on a preliminary injunction. Unless the court has other questions about it. Is it relevant here that this Supreme Court case, the $20 in the Seventh Amendment, wasn't decided until after Judge Osteen ruled? Well, I think it underscores that the district court did not abuse its discretion at the time because the court was assessing the likelihood of success of the merits at the time it heard the case. Jarczy had not been decided at that point. I think authority pointed pretty decisively in favor of showing that plaintiff was unlikely to succeed on the Seventh Amendment claims. And so I think the fact that Jarczy was decided after the fact does show that there was no abuse of discretion here. Now, as for unless the court has any other questions on that, I'll run through some of the other merits arguments as there are for total constitutional challenges here. The plaintiff also makes an argument that the ALJ's removal restrictions are unconstitutional. This court can easily dispense with that argument because under K&R Contractors, it made clear that the plaintiff is not entitled to relief on that claim because the actions of a lawfully appointed officer are legitimate and enforceable even if- Can I address this solely to question whether the exception applies? I didn't catch that. The exception, whether it is a public right or a private right. I'm sorry. In other words, the exception to whether this is considered a part of the Seventh Amendment Article 3 as to whether it is a public right or a private right that's being implicated here. Right, so I think the merits of the Seventh Amendment claim would implicate that distinction. And I would just say, though, if this court is seriously considering ruling on the merits on that particular issue, and, again, I think for reasons we've discussed, there's no need to- But can we rest it solely on that if we determine one way or the other that it meets that requirement? Yes, if this court finds that the Horse Protection Act claim involves public rights, then that should be dispositive of the Seventh Amendment. Well, does it? I'm sorry? Does it implicate a public right? I think it does because, look, this involves a question of- this is not the sort of claim that could have been brought at common law. What if it implicates both a public and a private right? Then what does that leave us? I mean, I'm not sure if- I think for something to implicate a public right, it has to be analogous to- excuse me, for something to implicate a private right, it has to be analogous to a common law claim at minimum. A plaintiff has argued that this is analogous to a common law fraud claim, but that's just not accurate because the fundamental element of any common law fraud claim is a statement or an intent to mislead or deceive. And that's just not- A stance or a requirement. Right. And that's not a requirement of a violation. What about the- it seems like there's some part of it that says it's there to deal with the individuals involved in the process and animal welfare. So it seems like it has some aspects of both public and private. So the primary purpose under the Horse Protection Act, and this is set forth in the first subsection of the statute addressing the congressional purpose and findings, is to prevent the abuse of these animals. A secondary subsidiary finding that Your Honor might be referring to is the regulation of competition here, but that subsidiary point doesn't require fraud or an intent to deceive. And that's a critical point here. The government's allegations in Mr. Maness don't allege that there was any fraud or deception here. It just alleges that he entered a horse that was soared into this competition. There's no fraud that's required here. To give Your Honor an example, he can- someone can enter a soared horse into a competition. Everybody can know it's soared, so there's no fraud or deception. Is that the whole purpose of strict liability? I'm sorry? That if it's strict liability, you don't have to go to prove those elements? Well, I mean, that may be why Congress wrote the Horse Protection Act in this way. But there is no standard requirement, and so it's not analogous to a common law fraud claim. There's just no reason for the court to draw an analogy to common law fraud. But I just want to reiterate there's no need, again, for this court to address the issue. Sorry, one point that I did want to make judgment on this before moving on to something else is that if this court does want to address the merits of this, thus far after jarcossy, all we've done is file supplemental letter briefs, 28J letters on this issue. A ruling on the jarcossy issue, on the Seventh Amendment issue, would be enormously consequential for the federal government. And so we would, only if the court is seriously intending on ruling on this, respect the opportunity to file a supplemental brief addressing the scope of jarcossy. Having said that, there are a number of avenues for it. My question is more, is it a case we could say, sometimes you don't have to get to the merits, you can say assuming for the sake of argument, then therefore, if that is so, the exception still does not provide relief here. Is that an avenue? So is there a case about whether this particular statute fits within? I mean, I think the McConnell case out of the Sixth Circuit, that was a district court decision, held that the actions brought under the Horse Protection Act do not implicate private rights, they implicate public rights. So that's one example. And so, again, I would just reiterate, there's no need for the court to go near this, but that would be one example of a case citing that. Basically, you like Judge King's reference to Ashwanda that he brought up earlier on constitutional void. Constitutional void, sure. But then again, that goes back to the posture that we're in here. Are you familiar with that case? Well, I'm familiar with the canon of constitutional avoidance. And I'm also familiar with the posture in which this case is being raised, which does not require this court to necessarily rule on the merits, because, again, there are four preliminary injunction factors here. Plaintiff can't establish irreparable harm. He can't show that the equity is tip in his favor. And so just for that reason, under the preliminary injunction standard, there's no reason for this court to go near the merits, to say nothing of the constitutional avoidance canon. I think that's my point on that. So, yes, again, with respect to the removal restriction, there's no need under K&R contractors for this court to go on that issue, because the plaintiff is not entitled to relief. Because the ALJs were lawfully appointed, there's no dispute here, and so plaintiff isn't entitled to relief on that claim. The plaintiff's argument that the judicial officer has to hold an office created by statute is contrary to the plain text of the Appointments Clause. All that requires is for Congress to vest by law the appointment of inferior officers and department heads. It is done so with 7 U.S.C. subsection 2204-2. It's a broad grant of authority to the secretary to delegate his authorities and also to create appropriate titles. The plain text of the statute presupposes that the secretary will create the titles and the offices. And so unless the court has any other questions on the merits, we would ask to affirm. Thank you very much, Mr. White. Mr. Robin. Thank you, Your Honor. Just to briefly set the procedural table, Your Honor, Judge King was asking what we requested in the lower court. And our motion requested for an injunction against the USDA from pursuing an alleged violation of the Horse Protection Act against Mr. Maness in USDA's unconstitutional adjudication process, and we cited to the docket number for the adjudication. And then in his opinion, he characterized our request as a request for being enjoined from enforcing the Horse Protection Act against a plaintiff through the USDA's administrative adjudication process. So the entire adjudication process for Mr. Maness will continue through the judicial officer's ultimate decision if there is an appeal, which is at some unknowable point in the future. So Mr. Maness has availed himself under Axon the opportunity to bring a collateral challenge to the claim, to the adjudication, raising his constitutional claims of this ongoing as the Supreme Court recognized that he could. And given that the injury that was recognized in Axon is being subjected to an unconstitutionally structured adjudication, he is suffering that injury each day he is in the adjudication. And so he sought a preliminary injunction of the entire adjudication process. That's correct. Judge Osteen denied that preliminary injunction. He ruled only on the first factor, that Mr. Maness was unlikely to succeed on the merits of his court. What is the irreparable harm? Here it is any one of the constitutional violations. So this court has recognized in the Miranda and the Leaders of a Beautiful Struggle cases that a deprivation of constitutional rights or a constitutional violation is necessarily an irreparable injury, even if it occurs for a minimal period of time. So I think if you combine Axon and Fourth Circuit precedent, as distinct from D.C. Circuit precedent, if this court finds that there is a likely constitutional violation on any one of the four claims, Mr. Maness has satisfied the irreparable injury prong and the public interest prong as well. Because this court and the Supreme Court have recognized that the government has no interest in pursuing policies, even desirable policies, through unconstitutional means. As to the Appointments Clause claim, I think that the Department of Agriculture's concession that the judicial officer's decisions cannot be reviewed by the secretary is a concession that ends the Appointments Clause claim in Mr. Maness's favor. After Arthrex, executive branch adjudicators have to have their decisions reviewed by principal officers in order for them to be inferior officers. There's no dispute here that the judicial officer is at most, is not a principal officer. He's not appointed by the president or confirmed by the Senate. And the structure of the Arthrex opinion was to... Well, what about remedy? Even if he is inappropriately appointed as a judicial officer, why would the remedy be to stop the proceeding before the ALJ? Well, Your Honor, what we're seeking here is a preliminary injunction, which I think is distinct from the final remedy in the case. And the USDA has made no argument in its briefing or in the lower court that the nature of the final remedy would have an impact on whether the current adjudication process would go forward. Even if we agree with you, you would say the proceeding before the ALJ does not stop. No, the entire proceeding, including before the ALJ, has to stop. Because if the USDA is correct that the judicial officer is properly functioning as an inferior officer, then the ALJs themselves are improperly supervised because there's no principal officer to review their decisions. The secretary can't intervene. They can't revoke the judicial officer's delegation, which would be the mechanism to review an ALJ decision without raising serious constitutional due process concerns under the Utica-Packin case at the Sixth Circuit. There, the secretary replaced the judicial officer after his initial decision and issued a subsequent decision. And that court found that to be unconstitutional because it was an unacceptable risk of unfairness to have a... Severability? Well, the remedy today would be to preliminarily enjoin the adjudication while the merits of the adjudication are heard in the district court. So the district court case has not been stayed. Summary judgment has been fully briefed and is pending before Judge Osteen. The summary judgment motion is pending. That's correct, Your Honor. So he can rule in your favor before we rule. That's conceivably possible, Your Honor, but Mr. Maness is still seeking a... Mr. Maness is still being injured every day. Have you argued that motion? No, Your Honor. You're on us to change things while it's still pending before Judge Osteen. Your Honor, we believe that Mr. Maness is suffering this irreparable injury every day. Mr. Maness is suffering? I thought you were worried about the horse. At the preliminary injunction stage, he's being injured by being subjected to this unconstitutional process. You say he's suffering four constitutional violations. That's correct, Your Honor. Every day. While the USDA adjudication is ongoing. Correct. Through the final decision of the judicial officer. Thank you very much. Thank you, Your Honor. We'll take a matter under advisement. We'll come down and read counsel, and then we'll proceed to the final case.
judges: Robert B. King, James Andrew Wynn, Stephanie D. Thacker